### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

---

C.P., individually and on
behalf of F.P., a minor child

        Plaintiff,

   v.

NEW JERSEY DEPARTMENT OF
EDUCATION, ANGELICA O. ALLEN-
MCMILLAN, Acting Commissioner
of Education, in her official
capacity, and CLIFTON BOARD
OF EDUCATION

        Defendants.

No. 1:21-cv-15677-NLH-MJS

**OPINION**

---

DAVID R. GILES
34 RYNDA ROAD
SOUTH ORANGE, NJ 07079

SARAN QIANA EDWARDS
JOHN RUE & ASSOCIATES, LLC
100 OVERLOOK CENTER
2ND FLOOR, #9211
PRINCETON, NJ 08540

JOHN DOUGLAS RUE
JOHN RUE & ASSOCIATES
100 OVERLOOK CENTER
2ND FLOOR, #9211
PRINCETON, NJ 08540

    *Counsel for Plaintiff*

CAROLYN G. LABIN
OFFICE OF THE NJ ATTORNEY GENERAL
DIVISION OF LAW
RJ HUGHES JUSTICE COMPLEX
25 MARKET STREET
PO BOX 112
TRENTON, NJ 08625-0112

JACLYN MICHELLE FREY
OFFICE OF NJ ATTORNEY GENERAL
RICHARD J. HUGHES JUSTICE COMPLEX
25 MARKET STREET
PO BOX 112
TRENTON, NJ 08625-0112

RYAN J SILVER
STATE OF NEW JERSEY
OFFICE OF THE ATTOREY GENERAL
25 MARKET STREET
P.O. BOX 112
TRENTON, NJ 08625

> *Counsel for Defendants New Jersey Department of Education
> and Angelica O. Allen-McMillan Acting Commissioner of
> Education, in her official capacity*

JESSIKA KLEEN
MACHADO LAW GROUP
1 CLEVELAND PLACE
SPRINGFIELD, NJ 07081

> *Counsel for Defendant Clifton Board of Education*

**HILLMAN**, **District Judge**

Currently before the Court is the State Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF 48).  For the reasons that follow, the State Defendants' motion will be granted in part and denied in part.

## I.   FACTUAL AND PROCEDURAL HISTORY

F.P. is a minor child who "is classified to receive special education programs and services."  (Amended Complaint, ECF 19 [hereinafter, "Am. Compl."] at ¶ 48).  F.P. attended school in the Clifton School District, which is managed by the Clifton Board of Education (the "Board" or "Clifton").  (Id. at ¶¶ 16,

47).  In November 2016, Clifton conducted a reevaluation of F.P. (Id. at ¶ 49).  His parent, C.P., disagreed with the results of the November 2016 evaluation.  (Id. at ¶ 50).  In January 2017, C.P. sent a letter to Clifton advising of her disagreement, and requesting "an independent Psychological Evaluation be performed at District expense" as well as "an independent Auditory Processing Evaluation be performed at District expense."  (Id. at ¶¶ 50-51).  Clifton did not respond to this letter nor to a follow up letter sent in March 2017.  (Id. at ¶¶ 54-55).

On April 27, 2017, C.P. filed a petition for due process with the New Jersey Department of Education ("NJ-DOE") on behalf of herself and F.P. seeking to hold the "LEA liable for the cost of an independent education evaluation of F.P."  (Id. at ¶ 58). This Petition was transmitted from the New Jersey Department of Education ("NJDOE") to the Office of Administrative Law ("OAL") on October 24, 2017.  (Id. at ¶ 59).  On December 11, 2017, the Board filed a Motion to Dismiss.  (Id. at ¶ 62).  On December 12, 2017, Plaintiffs requested a briefing schedule for motions for summary disposition, and asked the Administrative Law Judge ("ALJ") to administratively terminate the Board's Motion to Dismiss.  (Id.).  That same day, the parties advised their settlement judge that they had not reached a settlement.  (Id.). The matter was then assigned to ALJ Celentano.  (Id.).

As of February 2, 2018, the parties' cross-motions for summary decision were fully briefed.  (Id.).  On April 9, 2018, ALJ Celentano stated during a telephone status conference "that she would not decide the pending motions and that either the case would settle, or it would go to trial."  (Id.).  The OAL set a hearing for September 7, 2018, which was adjourned until October 24, 2018.  (Id.).  In the interim the Parties nearly reached a settlement agreement on two different occasions, once on December 26, 2017 and once on August 22, 2018.  (Id.).  On October 11, 2018, C.P. filed a motion for sanctions.  (Id.).  Ultimately, the parties appeared for a hearing on October 24, 2018 and submitted post-hearing briefs on November 19, 2018.  (Id.).

Following the hearing, the ALJ issued a decision on December 13, 2018.  (Id. at ¶ 63).  Plaintiffs state that the decision was issued three hundred and nine (309) days after the matter was transmitted to the OAL, excluding the days related to adjournments requested by either party or by consent of the Parties.  (Id. at ¶ 72).  Plaintiffs allege that while the decision states that it is the ALJ's "final" decision, it failed to address five pending motions filed by C.P., including the motion for summary disposition, motion for sanctions related to a frivolous filing, motion to exclude the Board's evidence, a

second motion for summary decision, and motion for sanctions based on discovery misconduct.  (Id. at ¶ 65).

Plaintiffs also aver that the ALJ's decision did not resolve the question of Clifton's liability, instead ruling "for the District on the basis that documentation of the costs incurred to obtain the evaluations privately were insufficient." (Id. at ¶ 66).  Plaintiffs allege that "even if the documentation were insufficient, C.P. would be entitled to obtain new evaluations that corrected any deficiencies the ALJ identified." (Id.).  Premised on these stated deficiencies, Plaintiffs filed a complaint against ALJ Celentano.  (Id. at ¶ 69).  Further, Plaintiffs appealed the ALJ's decision in federal court on March 13, 2019.  The matter was docketed at <u>C.P. o/b/o F.P. v. Clifton Bd. of Edu.</u>, No. 19-8469, before the Honorable Kevin McNulty.

On August 6, 2020, the matter was remanded, with instruction from the Court for the ALJ to determine the issue of liability--the Court remanded the matter to allow Plaintiffs the opportunity to present evidence that the IEEs were reimbursable. (Id. at Exhibit B at 21-22).  The remanded matter was commenced in the OAL on June 22, 2021.  (Id. at ¶ 76).  As of October 7, 2021, the parties' cross-motions for summary decision were fully briefed.  (Id. at ¶ 78).  No hearing was held.  (Id. at ¶ 81). The OAL issued its decision on October 18, 2021.  (Id. at ¶ 79).

Plaintiffs allege a list of errors by the OAL in its Remand Decision, and assert that it must be reversed. (Id. at ¶¶ 82–94). In addition, Plaintiffs note that the proceedings on remand took one-hundred eighteen days. (Id. at ¶ 81).

C.P. alleges that while this dispute has been ongoing, she "has been alienated from her local school district, and unable to collaborate freely with them about the education of F.P." (Id. at ¶ 95). She asserts that she is dissatisfied with the programing provided to F.P., but has not sought a due process hearing as "she knows that a due process hearing will not be provided by NJ-DOE within forty five days." (Id. at ¶ 99).

Meanwhile, beginning August 18, 2018, the United States Department of Education ("USDOE") advised that it would conduct an on-site visit of the NJDOE, which occurred on September 20 and 21, 2018. (Id. at ¶ 102–03). The USDOE also collected data and information from the NJDOE. (Id. at ¶ 104). The USDOE concluded that the NJDOE "does not have procedures for ensuring that decisions in due process hearings are issued within the 45-day timeline or within allowable extensions." (Id. at ¶ 110). In response, on August 6, 2019, the NJDOE issued a memorandum setting out revised procedures for due process hearings. (Id. at ¶ 120). This memorandum advises that beginning October 1, 2019, the NJDOE will publish data on its website monthly, including the number of due process hearings conducted, the

number of hearings resolved, the number of hearings pending, the number of extensions requested, and the number of extensions granted.  (Id.).  As of Plaintiffs' Amended Complaint filed on November 17, 2021, Plaintiffs advise that the NJDOE had not published this information.  (Id. at ¶ 122).

On May 22, 2019, Plaintiffs in this action, along with additional plaintiffs, filed a class action seeking injunctive relief related to "systemic flaws in NJDOE's system for timely resolving special education cases in the State of New Jersey." (C.P., et al. v. N.J. Dep't of Edu., et al., No. 1:19-cv-12807, ECF 1 at ¶ 1).  On December 18, 2023, this Court entered an Order granting preliminary approval of a class action settlement.  No. 19-12807, ECF 549.  The Settlement Agreement provides for injunctive relief requiring all final decisions on all due process petitions filed with the NJDOE pursuant to the IDEA to be issued no later than 45 days after expiration of the 30-day adjusted resolution period.  (No. 19-12807, ECF 546-2 at § IV.10).  It also provides for the appointment of a compliance monitor to ensure compliance with the agreement.  Id. at § VI.

The settlement Agreement does not bar individual damages actions, and with respect to this action specifically states, "[t]he Parties acknowledge that two named plaintiffs, (i) C.P. o/b/o F.P. and (ii) M.S. o/b/o H.S., have asserted individual claims in separate actions, inter alia, against defendant NJDOE.

The release in this Agreement does not affect any claims or defenses that have been or may be alleged in those actions." (Id. at § XV).

On August 18, 2021, Plaintiffs filed their initial complaint in this matter (ECF 1), and on November 17, 2021, Plaintiffs filed their Amended Complaint (ECF 19).  The Amended Complaint includes as defendants the NJDOE, the Acting Commissioner of Education Angelica Allen-McMillan, Ed.D., and the Clifton Board of Education.

The Amended Complaint includes four counts, as follows: violation of the 45-day rule pursuant to 20 U.S.C. § 1415 against the NJDOE (Count I), injunctive relief pursuant to 42 U.S.C. § 1983 against Commissioner Allen-McMillan (Count II), violation of Plaintiffs' right to an impartial due process hearing under the IDEA and N.J.A.C. 6A:14-1, *et seq.* against the NJDOE and Commissioner Allen-McMillan (Count III), and an appeal pursuant to 20 U.S.C. § 1415 against Clifton Board of Education (Count IV).

On April 25, 2022, the State Defendants, which include the New Jersey Department of Education and the Acting Commissioner of Education Angelica Allen-McMillan, Ed.D. filed a Motion to Dismiss.  (ECF 48).  On June 7, 2022, Plaintiffs filed a response.  (ECF 58).  Finally, on July 19, 2022, Defendants filed their reply.  (ECF 62).

## II.  <u>LEGAL STANDARD</u>

When considering a motion to dismiss a complaint for
failure to state a claim upon which relief can be granted
pursuant to Federal Rule of Civil Procedure 12(b)(6), a court
must accept all well-pleaded allegations in the complaint as
true and view them in the light most favorable to the plaintiff.
<u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005).  A pleading
is sufficient if it contains "a short and plain statement of the
claim showing that the pleader is entitled to relief."  Fed. R.
Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to
dismiss does not need detailed factual allegations, a
plaintiff's obligation to provide the 'grounds' of [her]
'entitle[ment] to relief' requires more than labels and
conclusions, and a formulaic recitation of the elements of a
cause of action will not do."  <u>Bell Atl. Corp. v. Twombly</u>, 550
U.S. 544, 555 (2007) (first alteration added) (second alteration
in original) (citation omitted).

To determine the sufficiency of a complaint, a court must
take three steps: (1) the court must take note of the elements a
plaintiff must plead to state a claim; (2) the court should
identify allegations that, because they are no more than
conclusions, are not entitled to the assumption of truth; and
(3) when there are well-pleaded factual allegations, a court

should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations, quotations, and other citations omitted).  A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice.  S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999).

"A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'"  Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

Rule 12(b)(1) governs the State Defendants' motion to the extent it challenges Plaintiffs' action on standing grounds.  "A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack."  Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016).  "The former challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'"  Id. (quoting Petruska v. Gannon Univ., 462 F.3d 294, 302 n.3 (3d Cir. 2006)).  A factual challenge attacks the allegations underlying the complaint's assertion of jurisdiction, "either through the

filing of an answer or 'otherwise present[ing] competing facts.'" Id. (quoting Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014)).

The Court of Appeals for the Third Circuit has held that motions to dismiss for lack of standing are best understood as facial attacks. In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012) ("Defendants' Rule 12(b)(1) motions are properly understood as facial attacks because they contend that the [a]mended [c]omplaints lack sufficient factual allegations to establish standing.").

In assessing a facial attack on subject matter jurisdiction under Rule 12(b)(1), courts must apply the familiar 12(b)(6) standard. Id. ("In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim"); see also Baldwin v. Univ. of Pittsburgh Med. Ctr., 636 F.3d 69, 73 (3d Cir. 2011) ("A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim."). Guided by In re Schering Plough and Baldwin, the Court finds it must apply the 12(b)(6) standard to Defendants' jurisdictional arguments.

III. **DISCUSSION**

A. **Subject Matter Jurisdiction**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367.

B. **The IDEA**

Before delving into Defendants' arguments, this Court will describe, in part, the IDEA as it is central to Plaintiffs' claims. Congress enacted the IDEA to, among other things, "ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1)(A)-(B). The IDEA requires that every child with a disability receive a free appropriate public education (a "FAPE") from their public school if that school receives federal funding under the IDEA. Id. at § 1412(a)(1)(A); 34 C.F.R. § 300.101(a). The term "free appropriate public education" means the provision of "special education and related services" that meet certain criteria. 20 U.S.C. § 1401(9). The IDEA also guarantees parents of disabled children a right to participate in the educational programming offered to their children.

To ensure that public schools adequately provide a FAPE and that the rights of disabled students and their parents are not infringed, Congress enacted various "procedural safeguards" that participating public schools must comply with. Id. at § 1412(a)(6)(A); id. at § 1415(a). One such procedural safeguard

12

provides standards for adjudicating disputes about whether a school has adequately provided a FAPE.  Id. at § 1415(b).  Per Congress' requirements, these disputes begin with the filing of a "due process petition" or "due process complaint."  Either the public school or the child may file a due process complaint, and that complaint may seek relief with respect to "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  Id. at § 1415(b)(6).

The IDEA contemplates that it is the State Educational Agency that is responsible for ensuring fair and impartial procedures in place to handle any due process petition.  Id. at § 1415 (f)(1)(A) ("Whenever a complaint has been received under subsection (b)(6) or (k), the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency."); id. at § 1415(e)(1) ("Any State educational agency or local educational agency that receives assistance under this subchapter shall ensure that procedures are established and implemented to allow parties to disputes involving any matter . . . to resolve such disputes through a mediation process").  Once a due process complaint has been filed, Congress has set

strict deadlines by which certain events must occur.  See id. at § 1415(f)(1)(B)(ii) (referencing timelines "applicable [to] a due process hearing"); 34 C.F.R. § 300.515(a) (setting forth a strict timeframe for due process petition resolution); N.J.A.C. 6A:14-2.7(j) (same).

Beginning with the date the due process complaint is filed, the parties have thirty days within which to settle or otherwise resolve the dispute to the satisfaction of the parent and child. See 20 U.S.C. § 1415(f)(1)(B); 34 C.F.R. § 300.510(b).  This period is referred to as the "resolution period."  34 C.F.R. § 300.510(b).  If the case is not resolved during the resolution period, it may proceed to a hearing.  Congress has called these "due process hearings."  In New Jersey, "[a] due process hearing is an administrative hearing conducted by an administrative law judge" in the OAL.  N.J.A.C. 6A:14-2.7(a).  "If the local educational agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all of the applicable timelines for a due process hearing under this subchapter shall commence."  20 U.S.C. § 1415(f)(1)(B)(ii); 34 C.F.R. § 300.510(b); see N.J.A.C. 6A:14-2.7(j) ("A final decision shall be rendered by the administrative law judge . . . after the conclusion of the resolution period").  Once the 30-day resolution period ends, federal regulations require that due

process petitions be decided by hearing officers within 45 days,
unless either party requests specific adjournments.  34 C.F.R. §
300.515(a) (states receiving federal funding "must ensure that
not later than 45 days after the expiration of the 30 day period
under § 300.510(b) ... (1) A final decision is reached in the
hearing; and (2) A copy of the decision is mailed to each of the
parties.").  New Jersey's Administrative Code contains a similar
requirement.  N.J.A.C. 6A:14-2.7(j) ("[a] final decision shall
be rendered by the administrative law judge not later than 45
calendar days after the conclusion of the resolution period.")

Both federal and New Jersey State law permit "specific
adjournments" to be granted "at the request of either party"
which will effectively toll the 45-day period within which a
decision must be entered.  See N.J.A.C. 6A:14-2.7(j) (45-day
period may only be extended if "specific adjournments are
granted by the administrative law judge in response to requests
by either party to the dispute"); 34 C.F.R. § 300.515(c) ("[a]
hearing or reviewing officer may grant specific extensions of
time beyond the periods set out in paragraphs (a) and (b) of
this section at the request of either party.").  No other delays
are contemplated.  Therefore, if no specific adjournments are
requested by the parties, a final decision must be rendered
within 45 days after the end of the 30-day resolution period.
34 C.F.R. § 300.515(a); N.J.A.C. 6A:14-2.7(j).  The Court refers

15

to this requirement as the "45 Day Rule."  With that overview, the Court turns to the arguments set forth in the Parties' briefing.

### C. <u>Collateral Estoppel</u>

Before analyzing the substance of Defendants' arguments, this Court must first address Plaintiffs' claim that certain arguments are precluded by the doctrine of collateral estoppel. Plaintiffs assert that the following issues were already decided by this Court in <u>M.D. v. Vineland City Board of Edu.</u>, 19-12154: (1) whether Plaintiffs plausibly stated a claim for violations of the 45-day rule; (2) whether Commissioner Allen-McMillan is a proper defendant; and (3) whether Plaintiffs' § 1983 claim should be dismissed.  (ECF 58 at 18, 20, 23,).  Defendants respond that this Court's decision on these issues in M.D. was not a "final judgment" as defined in the context of collateral estoppel.  (ECF 62 at 3).

"Collateral estoppel prevents the re-litigation of a factual or legal issue that was litigated in an earlier proceeding."  <u>Doe v. Hesketh</u>, 828 F.3d 159, 171 (3d Cir. 2016). Collateral estoppel is applicable where:

> (1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair

> > opportunity to litigate the issue in
> > question.

Id. (quoting Del. River Port Auth. v. Fraternal Order of Police,
290 F.3d 567, 573 n.10 (3d Cir. 2002)).

As it relates to the question of whether Defendants were
permitted to argue that the claims against Commissioner Allen-
McMillan should be dismissed, the conclusion in M.D. is not
final so as to give preclusive effect.  This Court stated that
it would not "dismiss the claim against the Commissioner at this
time."  M.D. v. Vineland City Bd. of Educ., No. 19-12154, 2022
WL 844423, at *8 (D.N.J. Mar. 22, 2022).  The Court also noted
that the claims against the Commissioner "may ... turn out to be
duplicative in this matter."  Id. at *7.  Accordingly, as the
Court left open the question of the Commissioner's status in the
litigation, this determination is not sufficiently firm so as to
be afforded preclusive effect.  See In re Brown, 951 F.2d 564,
569 (3d Cir. 1991) (quoting Restatement (Second) of Judgments, §
13 at 132) ("the doctrine of collateral estoppel applies
whenever an action is 'sufficiently firm to be accorded
conclusive effect.'").

In so finding, this Court notes that a denial of a motion
to dismiss may be considered final for purposes of issue
preclusion, and there is no bright line rule that can be applied
to make this determination.  In re Geo Specialty Chems. Ltd.,

577 B.R. 142, 188 (Bankr. D.N.J. 2017) ("A denial of a motion to
dismiss can be sufficiently 'final' for purposes of issue
preclusion."); Free Speech Coalition, Inc. v. Att'y Gen. of
U.S., 677 F.3d 519, 541 (3d Cir. 2012) ("There is no bright-line
rule regarding what constitutes a 'final judgment' for issue
preclusion.").  However, here the prior adjudication was not
rendered so conclusively so as to warrant issue preclusion.

In M.D., in finding that an exception to Eleventh Amendment
immunity may apply, this Court explained that "[w]hile not
pleaded artfully, Plaintiffs' complaint essentially asks the
Court to remedy the procedural problems with the dispute
resolution system so that Plaintiffs can get a fair result as
required under the law and perhaps bring other claims."  M.D.,
2022 WL 844423, at *8.  Here, the Court must similarly consider
whether Plaintiffs seek the type of relief that permits an
exception to the Eleventh Amendment.

As for the argument for estoppel as to whether Plaintiffs
plausibly stated a claim for violation of the 45-day rule, this
is a fact specific question that was not addressed in this
Court's decision in M.D.  With respect to the § 1983 claim,
again this is not a purely legal question and the facts of this
case were not addressed in M.D.  It requires analysis of the
sufficiency of Plaintiffs' allegations and analysis of the
relief sought.  Thus, the doctrine of collateral estoppel will

18

not apply to either of these issues either.

Although this Court addresses the question of whether <u>M.D.</u> provides a basis for collateral estoppel as briefed by the Parties, this question is superseded, at least in part, by a subsequent Opinion by this Court.  Since the conclusion of briefing on the instant Motion to Dismiss, this Court has issued an Opinion on summary judgment in the related class action, <u>C.P. et al. v. N.J. Dept. of Edu.</u>, No. 1:19-cv-12807, 2022 WL 3998700.  The class action includes Plaintiffs in this matter as well as both Defendants that filed this Motion to Dismiss.  In the class action, this Court held that Plaintiffs' § 1983 claim is not barred by the Eleventh Amendment and that Plaintiffs may pursue a § 1983 claim.

As the Court has determined that collateral estoppel does not preclude Defendants' arguments as to whether the Commissioner is a proper defendant and as to the application of the 45-day rule, the Court will address Defendants' substantive arguments.  In addition, although the Court notes that it has decided the question of the Eleventh Amendment bar and the application of § 1983 in the related class action, this Court will reiterate its analysis on these points below.

### D. <u>Standing</u>

Defendants assert that Plaintiffs have not plead sufficient concrete harm or causal connection to establish Article III

standing.  Specifically, Defendants explain that Plaintiffs
"agreed to a motion briefing schedule and consented to the
extension of the duration of the remand proceedings.  They did
not suffer harm by the delay as they agreed to it and the State
Defendants were not the cause of the delay."  (ECF 48-1 at 16–17
(citation omitted)).  They argue first that Plaintiffs did not
notify the NJDOE of the August 6, 2020 remand order until June
2021 and that the matter was transmitted to the OAL eight days
after that notification.  (Id. at 18).  Then, briefing proceeded
according to an agreed upon schedule.  (Id. at 19).  Thus,
Defendants aver that they were not the but for cause of
Plaintiffs' alleged injury.  (Id.).  Defendants further assert
that the OAL rendered a decision 11 days after motion briefs
were submitted. . . . Any delay here did not cross the line from
procedural to substantive."  (Id. (citation omitted)).

Plaintiffs argue that they "have indeed alleged 'concrete
harm' 'causally connected' to State Defendants' systemic
violation of the 45-Day Rule.  (ECF 58 at 14).  They further
assert their "due process case" on remand "far exceeded 45 days"
and that a significant delay in providing a due process
constitutes a substantive rather than procedural harm.  (Id.).

There are three elements that Plaintiffs must meet to
satisfy Article III standing.  First, there must be an "'injury
in fact,' or an 'invasion of a legally protected interest' that

20

is 'concrete and particularized.'"  In re Horizon Healthcare
Servs. Data Breach Litig., 846 F.3d 625, 633 (3d Cir. 2017)
(alteration in original) (quoting Lujan v. Defs. of Wildlife,
504 U.S. 555, 560 (1992)).  Second, there must be a "causal
connection between the injury and the conduct complained of[.]"
Id. (quoting Lujan, 504 U.S. at 561).  Third, there must be a
likelihood "that the injury will be redressed by a favorable
decision."  Id. (quoting Lujan, 504 U.S. at 561).

     The Court of Appeals for the Third Circuit has held that
motions to dismiss for lack of standing are best understood as
facial attacks.  In re Schering Plough Corp. Intron/Temodar
Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012)
("Defendants' Rule 12(b)(1) motions are properly understood as
facial attacks because they contend that the Amended Complaints
lack sufficient factual allegations to establish standing.").
In assessing a facial attack on subject matter jurisdiction
under Rule 12(b)(1), courts must apply the familiar 12(b)(6)
standard.  Id. ("In evaluating whether a complaint adequately
pleads the elements of standing, courts apply the standard of
reviewing a complaint pursuant to a Rule 12(b)(6) motion to
dismiss for failure to state a claim"); see also Baldwin v.
Univ. of Pittsburgh Med. Ctr., 636 F.3d 69, 73 (3d Cir. 2011)
("A dismissal for lack of statutory standing is effectively the
same as a dismissal for failure to state a claim.").  Guided by

<u>In re Schering Plough</u> and <u>Baldwin</u>, the Court finds it must apply the 12(b)(6) standard to Defendants' jurisdictional arguments. Because Defendants have also asserted that Plaintiffs fail to state a claim for Counts I, II, and III, the Court will address the standing challenges related to Counts I and II in the discussion of the sufficiency of the pleadings for those respective counts below.

### E. **Acting Commissioner Allen-McMillan**

Defendants assert that the claims against Commissioner Allen-McMillan "should be dismissed because the IDEA does not impose liability on individual state actors."  (ECF 48-1 at 25).

Defendants' position that the claims for violation of the IDEA brought against state officials must be dismissed because the IDEA does not allow claims against individual officials has some support in case law.  See <u>Taylor v. Altoona Area Sch. Dist.</u>, 513 F. Supp. 2d 540, 553 (W.D. Pa. 2007) (discussing the IDEA and stating, "[t]he United States Court of Appeals for the Third Circuit has recognized that Congress does not normally seek to impose liability on individuals when it places conditions on the receipt of federal funds by entities that employ such individuals.") (<u>citing</u> <u>Emerson v. Thiel College</u>, 296 F.3d 184, 190 (3d Cir. 2002)); <u>R.S. v. Glen Rock Bd. of Educ.</u>, No. 14-CV-0024 SRC, 2014 WL 7331954, at *5 (D.N.J. Dec. 19, 2014).

22

However, this Court also recognizes that "in many circumstances it is appropriate for a plaintiff to assert IDEA and Rehabilitation Act claims against individuals in their 'official capacities' as school administrators, school district personnel, or school board members."  New Jersey Prot. & Advoc., Inc. v. New Jersey Dep't of Educ., 563 F. Supp. 2d 474, 492 (D.N.J. 2008).  This Court notes that the court in New Jersey Prot. & Advoc., Inc. dismissed the claims against the individuals named in their official capacities as duplicative of claims against the state.  Id.  It may be the case that such claims will be duplicative in this matter, but at this early stage of the litigation, the Court is not prepared to dismiss the claims against the individual defendants on this ground.  As the scope of the liability, if any, that may ultimately fall to the NJDOE and the OAL is unresolved at this point in litigation, the Court will not dismiss the claims against the individual defendants as duplicative.  P.V. ex rel. Valentin v. Sch. Dist. of Philadelphia, 2011 WL 5127850, at *12 (E.D. Pa. Oct. 31, 2011) ("While some courts have dismissed claims against individual, official capacity defendants as redundant, they have done so after satisfying themselves that the remaining entity defendant(s) were willing to take responsibility for the individual defendants' action.").

Therefore, Defendants' argument that all claims against the

Commissioner should be dismissed will be denied.

### F. <u>Failure to State a Claim</u>

Defendants assert that Plaintiffs fail to state a claim upon which relief can be granted with respect to Counts I, II, and III.[1]

### i. Violation of the 45-day rule pursuant to 20 U.S.C. § 1415 (Count I)

Plaintiffs first count is a violation of the 45-day rule under the IDEA by the NJDOE.  Defendants assert that this count should be dismissed because (1) "the IDEA's 45-day rule does not apply to remand proceedings" and (2) even if the 45-day rule does apply, "Plaintiffs fail to state a claim upon which relief can be granted."  (ECF 48-1 at 20).

Defendants argue that there is no "45-day requirement for a matter remanded for further proceedings."  (ECF 48-1 at 22). Plaintiffs argue that there is nothing in the regulations that describe the 45-day rule that excludes remand from its purview. (ECF 58 at 16).  Plaintiffs further argue that "a special education due process hearing is intended to be a rapid, fact-finding procedure where delay beyond 45 days is unacceptable." (Id.).  Plaintiffs urge that "State Defendants' interpretation would grant an unlimited period of time for ALJs to issue final

---

[1] The only other count, Count IV, is brought against Defendant Clifton Board of Education, which is not the subject of this Motion to Dismiss.

decisions in special education cases on remand.  This would be an unjust and absurd result and a violation of IDEA's Procedural Safeguards."  (Id. at 17).

Looking to the plain language of the 45-day rule, the regulations require a final decision "not later than 45 days after the expiration of the 30 day period under § 300.510(b), or the adjusted time periods described in § 300.510(c)."  34 C.F.R. § 300.515.  § 300.510(b) refers to the resolution period, defined as the first 30 days after the LEA has received the due process complaint and § 300.510(c) provides for adjustments to that 30-day period where the parties agree to either end the resolution period sooner or extend the resolution period.

In addition, this Court is not aware of any Court that has applied the 45-day rule on remand and the weight of the authority is to the contrary.  See, e.g., Blake C. v. Dep't of Educ., No. 06-00335, 2007 WL 1240211, at *6 (D. Haw. Apr. 26, 2007) ("A remand does not retrigger the forty-five day period. Instead, on remand a Hearings Officer's jurisdiction is narrowly limited to the scope of the remanded question."); Clay v. D.C., No. 09-1612, 2012 WL 3758158, at *5 (D.D.C. Aug. 28, 2012) ("No provision of the Individuals With Disabilities Education Act expressly provides for the remand of a matter for further administrative proceedings. 'While 'the Court has the authority to undertake its own review of the record ... and issue judgment

25

in the case,' . . . 'the district court may determine that the appropriate relief is a remand to the hearing officer for further proceedings[.]'' . . . Remand is regarded as an appropriate exercise of the court's discretion where the record of the administrative proceedings is insufficient to allow for judicial review in accordance with the applicable deferential standard.") (citations omitted); Jones v. D.C., No. 17-01437, 2018 WL 7286022, at *21 (D.D.C. Sept. 5, 2018), report and recommendation adopted, No. 17-1437, 2019 WL 532671 (D.D.C. Feb. 11, 2019) ("the remand proceedings anticipated in that case would not be subject to the forty-five day deadline codified at 34 C.F.R. 300.515(a).").

However, this Court need not opine on the record of this case as to whether the 45-day rule applies on remand from the District Court.  Even if the 45-day rule does apply on remand, Plaintiffs have not sufficiently plead facts to plausibly allege a claim that the OAL's Final Decision on remand was untimely where decision was issued only eleven days after the conclusion of briefing.  (Am. Compl. at ¶ 78).  In their Motion to Dismiss, Defendants argue that Plaintiffs "agreed to a motion briefing schedule and consented to the extension of the duration of the remand proceedings."  (ECF 48-1 at 17).

Plaintiffs do not specifically respond to this in their opposition.  However, looking to the allegations in the

Complaint, Plaintiffs explained the timeline on remand.  (Am.
Compl. at ¶ 78).  This case was remanded by the District Court
on August 7, 2020.  (Id.).  Almost a year later, Plaintiffs'
Counsel commenced the remand in the OAL on June 22, 2021.[2]
(Id.).  Plaintiffs then allege that 45 days later, on August 8,
2021, the period to adjudicate the matter on remand expired.
(Id.).

However, Plaintiffs go on to explain that there was an
Initial Prehearing Conference on July 12, 2021.  (Id.).
According to the Agency's Final Decision, attached to the
Complaint as Exhibit C, at the Prehearing Conference "both
parties agreed to draft a joint stipulation of the relevant
facts on the remand, and a briefing schedule for cross-motions
for summary decision."[3]  (Am. Compl, Exh. C at 84).  The briefing

---

[2] The Court notes the year long delay between the Court's remand
and commencement in the OAL is not part of the alleged one-
hundred-eighteen-day delay in issuing a final decision on
remand.  The violation that Plaintiffs allege is that "[t]he NJ-
DOE did not ensure that the remanded matter was completed within
forty-five days of its recommencement in OAL."  (Am. Compl. at ¶
80).

[3] Although this fact is not alleged in the numbered paragraphs of
the Amended Complaint, it is attached as an Exhibit to the
Amended Complaint and accordingly may be considered in
determining the sufficiency of the pleading.  See Pension Ben.
Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196
(3d Cir. 1993) ("To decide a motion to dismiss, courts generally
consider only the allegations contained in the complaint,
exhibits attached to the complaint and matters of public
record.").

schedule then proceeded with the parties' Joint Stipulation of
Facts filed on August 12, 2021.  (Am. Compl. at ¶ 78).  The
parties' cross-motions for summary decision were filed on
September 27, 2021.  (Id.).  Finally, the motions were fully
briefed as of October 7, 2021.  (Id.).  The OAL issued its Final
Decision on October 18, 2021.  (Id.).  Plaintiffs aver that "the
remanded matter took one-hundred eighteen days to complete."
(Id. at ¶ 81).

According to these facts, as alleged in the Complaint,
there is no basis for finding that the OAL failed to issue a
timely decision where the Parties agreed to a briefing schedule,
and there was only an eleven-day turnaround between the
conclusion of briefing and the Final Decision.  Moreover, there
were twenty-five days between the commencement of the case in
the OAL on remand and the Initial Prehearing Conference where
the parties agreed to a briefing schedule.  Adding together
these twenty-five days and the eleven days it took for the OAL
to issue the Final Decision, only thirty-one days elapsed that
were unaccounted for by the Parties' agreed upon schedule.
Thus, even if the 45-day rule applies on remand, which this
Court is not deciding, Plaintiffs have not plead a violation.

Furthermore, even if the days during the briefing period
were counted, the inquiry does not end with a conclusion on
whether Defendants did not comply with the 45-day rule: the

Court must find that such a failure amounted to a denial of FAPE. "[T]he Supreme Court has directed that a school district's liability for violations of the IDEA is a two-fold inquiry: (1) [h]as the school district complied with the procedures set forth in IDEA?; and (2) [h]as the school district fulfilled its obligation to provide the student with a FAPE?" D.B. v. Gloucester Twp. Sch. Dist., 489 F. App'x 564, 566 (3d Cir. 2012) (quoting C.H. v. Cape Henlopen Sch. Dist., 606 F.3d 59, 66 (3d Cir. 2010)). Not every procedural violation of the IDEA constitutes denial of a FAPE. Here, where the final decision was rendered eleven days after the completion of the agreed upon briefing schedule, the Plaintiff has failed to allege sufficient facts to state a plausible claim this minimal delay amounted to a denial of FAPE.

Because Plaintiffs have not stated a claim for a violation of the 45-day rule on remand, Count I of the Amended Complaint will be dismissed.

### ii. Injunctive relief pursuant to 42 U.S.C. § 1983 (Count II)

The second Count is a claim for injunctive relief pursuant to § 1983, raised against Commissioner Allen-McMillan. Defendants first assert that this claim is barred by the Eleventh Amendment. (ECF 48-1 at 27). Then Defendants also assert that Plaintiff fail to state a cognizable claim under §

1983.  (Id. at 30).

### 1. Eleventh Amendment Immunity

As this Court has explained in the class action, there is
an exception to the Eleventh Amendment for suits brought against
an official in their official capacity seeking prospective
injunctive relief.  Under Ex parte Young, a federal court,
consistent with the Eleventh Amendment, "may enjoin state
officials to conform their future conduct to the requirements of
federal law, even though such an injunction may have an
ancillary effect on the state."  Quern v. Jordan, 440 U.S. 332,
337 (1979).  While the Eleventh Amendment generally divests
federal courts of subject matter jurisdiction over suits brought
by private parties against a state, there are three exceptions
to this general rule.

First, under the *Ex parte Young* doctrine the Eleventh
Amendment does not bar suits against state officials seeking
prospective equitable relief for ongoing violations of federal
law.  Pennsylvania Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297
F.3d 310, 323 (3d Cir. 2002) (citing MCI Telecomm. Corp. v. Bell
Atl. Pennsylvania, 271 F.3d 491, 502 (3d Cir. 2001); Ex parte
Young, 209 U.S. at 159–60).  Second, a state may be sued
directly if Congress has abrogated the state's immunity from
suit through an unequivocal expression of its intent to do so
and pursuant to a valid exercise of its powers.  See Seminole

Tribe of Fla. v. Fla., 517 U.S. 44, 54-55 (1996). Finally,
individuals may sue a state that has properly waived its
sovereign immunity and consented to suit. Id. "In determining
whether the Ex parte Young doctrine avoids an Eleventh Amendment
bar, the Supreme Court has made it quite clear that 'a court
need only conduct a straightforward inquiry into whether [the]
complaint alleges an ongoing violation of federal law and seeks
relief properly characterized as prospective.'" Hess, 297 F.3d
at 324 (quoting Verizon Maryland, Inc. v. Public Service
Commission of Maryland, 535 U.S. 635, 645 (2002)).

   At least one other court has found that an action seeking
injunctive relief against a state governor and state
superintendent of education for a state's alleged failure to
comply with the IDEA fell "squarely within the traditional
bounds of the Ex parte Young doctrine." Marie O. v. Edgar, 131
F.3d 610, 616 (7th Cir. 1997).

   Here, Plaintiffs have specifically alleged injunctive
relief.  Plaintiffs' complaint alleges procedural problems with
the dispute resolution system preventing Plaintiffs from a fair
process as required under the law and from bringing other
claims.  (See Am. Compl. at ¶ 96 ("C.P. continues to be
dissatisfied with the program being provided to F.P. by her
LEA.") and ¶ 99 ("Because she knows that a due process hearing
will not be provided by NJ-DOE within forty five days, C.P. has

not requested a due process hearing.").  Where there is an ongoing violation of federal law and the relief is prospective, the Court may order such relief.  <u>Delaware River Joint Toll Bridge Comm'n v. Sec'y Pennsylvania Dep't of Lab. & Indus.</u>, 985 F.3d 189, 193-94 (3d Cir. 2021), <u>cert. denied sub nom.</u> <u>Berrier v. Delaware River Joint Toll Bridge Comm'n</u>, 142 S. Ct. 109 (2021) (determining whether to grant the relief "requires us to 'conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law' and whether it 'seeks relief properly characterized as prospective.'") (<u>quoting</u> <u>Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.</u>, 535 U.S. 635, 645 (2002)).

In the related class action for injunctive relief, this Court ruled on this issue: "the Court holds that it has the power to grant prospective injunctive relief under the IDEA." <u>C.P. et al. v. N.J. Dept. of Edu.</u>, No. 1:19-cv-12807, 2022 WL 3998700 at *12 (D.N.J. Sept. 1, 2022).  This Court further notes that in the class action, the Parties have agreed to prospective relief:

> 10. For any due process. petition filed pursuant to IDEA, NJDOE shall ensure, pursuant to 34 C.F.R. § 300.515, that not later than 45 days after the expiration of the 30-day resolution period under 34 C.F.R. § 300.510(b), or the agreed-upon adjusted resolution periods described in 34 C.F.R. § 300.510(c), and accounting for the specific extensions of time requested by a party and

        granted by an Administrative Law Judge as
        provided in 34 C.F.R. § 300.515(c):

            a. A Final Decision, as defined supra
            at Paragraph 6, is reached by NJOAL;
            and

            b. NJOAL has mailed a copy of the
            decision to each of the parties.

(No. 19-12807, ECF 546-2 at § IV.10.).

### 2. Failure to State a Claim

    This Court ruled on the question of whether Plaintiffs may

pursue a § 1983 under the circumstances here in the related

class action, holding that such a claim may be cognizable.

C.P., No. 19-12807, 2022 WL 3998700, at *16.  The IDEA does not

allow Plaintiffs to use § 1983 to remedy violations of the IDEA

per se or directly under the IDEA, nor does it act as a bar to

suit under § 1983 based on separate, but intertwined or related,

substantive rights.  First, 20 U.S.C. § 1416(l) states:

            Nothing in this chapter shall be construed
            to restrict or limit the rights, procedures,
            and remedies available under the
            Constitution, the Americans with
            Disabilities Act of 1990, title V of the
            Rehabilitation Act of 1973, or other Federal
            laws protecting the rights of children with
            disabilities, except that before the filing
            of a civil action under such laws seeking
            relief that is also available under this
            subchapter, the procedures under subsections
            (f) and (g) shall be exhausted to the same
            extent as would be required had the action
            been brought under this subchapter.

Subsection (l) specifically leaves open the avenue for

plaintiffs to sue based on other substantive laws if the relief

sought is distinct from the relief available under the IDEA. A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 798 (3d Cir. 2007) ("By preserving rights and remedies "under the Constitution," section 1415 [(l)] does permit plaintiffs to resort to section 1983 for constitutional violations, notwithstanding the similarity of such claims to those stated directly under IDEA.") (emphasis in original).  Even though Plaintiffs mention provisions of the IDEA as background for their § 1983 claim, they cite to the Fourteenth Amendment as the underlying basis. (Am. Compl. at 132–39).

Courts, including this one, have held that there is a property interest in education and that therefore, prior to the deprivation of such interest, a plaintiff must be provided with a meaningful opportunity to be heard prior to the deprivation in order to comport with the Fourteenth Amendment. C.P., et al. v. New Jersey Dep't of Educ., et al., No. 19-12807, 2022 WL 3998700, at *16; Hamilton v. Radnor Twp., 502 F. Supp. 3d 978, 990 (E.D. Pa. 2020) ("The Fourteenth Amendment creates a guarantee of fair procedure whereby an individual can assert that she was deprived of a life, liberty, or property interest without due process of law.") (internal quotation marks omitted); Garcia v. Capistrano Unified Sch. Dist., 2018 WL 6017009, at *12 (C.D. Cal. Mar. 30, 2018) ("Further, a plaintiff can bring a Section 1983 action alleging the deprivation of

procedural due process in state special education administrative proceedings."); K.A. ex rel. J.A. v. Abington Heights Sch. Dist., 28 F. Supp. 3d 356, 367 (M.D. Pa. 2014) (noting property interest in public education); Abernathy v. Indiana Univ. of Pennsylvania, 2013 WL 3200519, at *1 (W.D. Pa. June 18, 2013) (noting the need for a meaningful opportunity to be heard before the deprivation of education); Dommel Properties, LLC v. Jonestown Bank & Tr. Co., 2013 WL 1149265, at *9 (M.D. Pa. Mar. 19, 2013) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner."). Thus, maintaining a separate claim under the Fourteenth Amendment to be vindicated via § 1983 is in accordance with § 1415(l) so long as the claim is ripe.

### 3. Standing

Plaintiffs have alleged a concrete harm from the systemic issues, that they have been unable to seek assistance with additional issues related to F.P.'s education plan. Plaintiffs have alleged a causal connection, asserting that the systemic failure has prevented Plaintiffs from seeking redress for further concerns with F.P.'s education plan.

Defendants' motion to dismiss Court II will be denied and this claim will be permitted to proceed.

### 4. Mootness

As noted above, since the instant motion has been fully

briefed, the parties in the related class action have agreed to prospective injunctive relief.  (No. 19-12807, ECF 546-2 at § IV.10.).  Plaintiffs in the instant case are both a part of the class as well as named Plaintiffs in the class action.  The Settlement Agreement specifically states that "[t]he Parties acknowledge that two named plaintiffs, (i) C.P. o/b/o F.P. and (ii) M.S. o/b/o H.S., have asserted individual claims in separate actions, inter alia, against defendant NJDOE.  The release in this Agreement does not affect any claims or defenses that have been or may be alleged in those actions."

However, Count Two of the Second Amended Complaint in the class action and Count Two in this instant individual action appear duplicative.  This agreement raises the question of whether Plaintiffs have received relief on their claim for injunctive relief and whether the claim for injunctive relief is mooted by the settlement agreement.  As the Parties have not had an opportunity to brief this question, this Court will not decide the issue here.  Rather, the Court will order briefing on this question.

### iii. Violation of right to an impartial due process hearing under the IDEA and N.J.A.C. 6A:14-1, *et seq.* (Count III)

Defendants assert that Plaintiffs fail to state a claim for violation of their right to an impartial due process hearing because "Plaintiffs received an impartial dispute resolution

process in full compliance with the IDEA and state regulations."
(ECF 48-1 at 31).

Plaintiffs assert this claim against the NJDOE and the
Commissioner.  In the Amended Complaint, in support of their
claim for violation of their right to an impartial due process
hearing under the IDEA, Plaintiffs allege that the ALJ's
decision on remand ignored federal and state regulations, legal
doctrines and interpretations, material facts, and pending
motions.  (Am. Compl. at ¶¶ 146-49).  As such, they conclude
that "[t]he Remand Decision constitutes a denial of the right to
a fair and impartial due process hearing" and that "NJ-DOE and
Commissioner Allen-McMillan have failed to ensure an impartial
due process hearing" by a competent as well as an adequately
trained hearing officer.  (Id. at ¶¶ 152-53).

Defendants argue that F.P. waived the right to a hearing on
remand, and as such this claim fails.  (ECF 48-1 at 31).
Plaintiffs respond that "[w]aiver is an affirmative defense and
inappropriate to raise in a motion to dismiss."  (ECF 58 at 24).
Plaintiffs also state that "parents do not waive IDEA Procedural
Safeguards, including the right to a due process hearing, see 20
U.S.C. §§1415(b)(6) and (f), unless they have affirmatively
agreed to waive them."  (Id. at 25).

Whether or not Plaintiffs waived any of their procedural
rights is beyond what is included in the Amended Complaint.  The

37

Amended Complaint does allege that "the remanded matter took one-hundred eighteen days to complete, and did not even include a hearing." (Am. Compl. at ¶ 81). It does not include any allegations as to why a hearing was not held. There are not sufficient allegations in the Amended Complaint for this Court to conclude that there was a waiver on the face of the Amended Complaint. As such, this is an argument that must be postponed until a later stage, once the facts related to whether there was a knowing and intelligent waiver are developed.

Defendants assert that "[b]ecause the IDEA requires isolation of the NJDOE from the decisions rendered by independent ALJs, the NJDOE cannot be held liable for the substance of the decisions rendered by these independent hearing officers." (ECF 48-1 at 34). However, Plaintiffs are not arguing that the NJDOE should have interfered with ALJ's individual decisions. Instead, Plaintiffs have alleged that the State Defendants have failed to ensure that the ALJs are adequately trained or have the requisite expertise prescribed for their position by the IDEA. (Am. Compl. at ¶¶ 141-43).

Defendants state that Plaintiffs have failed to allege what qualifications set out in the IDEA for ALJs the ALJ in Plaintiffs' matter did not meet. (ECF 48-1 at 34). However, Plaintiffs' Amended Complaint specifically alleges that the ALJ did not possess knowledge of the provisions of the IDEA or

federal and state regulations and that the ALJ did not have the "knowledge and ability to render and write decisions in accordance with appropriate legal practice." (Am. Compl. at ¶¶ 150-51). These allegations mirror certain of the minimum requirements for an ALJ as prescribed by the IDEA and as described by Defendants in their briefing. (See ECF 48-1 at 34 (citing 20 U.S.C. § 1415(f)(3)(A))).

The NJDOE has the overarching responsibility to ensure that the procedures for due process hearings run smoothly without actually adjudicating disputes itself. While the ALJs who conduct the due process hearings may not be NJDOE employees, 20 U.S.C. § 1415 (f)(3)(A)(i), the NJDOE is responsible for the infrastructure that creates such impartial due process hearings. Id. at § 1415(f)(1)(A) ("Whenever a complaint has been received under subsection (b)(6) or (k), the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency."). Plaintiffs have alleged training deficiencies of the ALJs and the ways that the OAL and the NJDOE are intertwined with sufficient facts to survive a motion to dismiss. The Court renders no opinion as to whether these allegations will ultimately be meritorious, only that they are

sufficiently pled to survive a motion to dismiss.

**IV.   <u>CONCLUSION</u>**

For the reasons expressed in this Opinion, the State Defendants' motion to dismiss (ECF 48) will be granted in part and denied in part.

An appropriate Order will be entered.


Date: February 29, 2024             s/ Noel L. Hillman
At Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.